JOHN C. SIMONDS

v.

EMILY S. P. ALLEN.

*Husband and Wife—Marriage—Bill to Declare Void—Divorce in Another State—Re-marriage—Rule in New York.*

1. It is a rule of law in the State of New York, that a decree of divorce obtained in another State against one who, at the time it was rendered and during the pendency of the proceeding was domiciled in New York, and who was not personally served with process, and did not appear in the action or proceedings, is wholly inoperative and void, so far as relates to the defendant in such divorce proceeding.

2. The presumption is, that a contract of marriage is to be performed in the place in which the parties to it are domiciled at the time the marriage is performed, and the capacity of each party to enter into a valid contract must be determined by the law of the place of the marriage.

3. A marriage, invalid at the place it was entered into, must be held invalid wherever the question of its validity is raised for determination.

4. Upon the introduction of the decisions of another State, showing the rule of law therein touching certain cases, it is proper for the court to determine the validity of a marriage contracted in that State by the law thereof.

5. Upon a bill filed praying that a marriage which had been performed in another State should be declared void, this court holds that the ceremony in question was a mere form, and that the trial court erred in dismissing said bill.

[Opinion filed October 23, 1889.]

Appeal from the Superior Court of Cook County; the Hon. Henry M. Shepard, Judge, presiding.

Messrs. John C. Simonds, *pro se*, Edward Maher and George A. Gary.

No appearance for appellee.

Moran, J. Appellant filed his bill in the Superior Court, praying that a marriage, which had been performed between him and the appellee in the State of New York, be declared void. An affidavit that appellee was a non-resident of this State, and that she was a resident of the State of New York, was filed, and proof of service upon her in the State of New York of a certified copy of the bill of complaint, and a notice, as required by statute, was made, and her default regularly entered. On hearing the evidence introduced by appellant in support of his bill, the chancellor refused the decree and ordered the bill dismissed, and to reverse such order this appeal is prosecuted.

The facts as alleged in the bill and proved by the evidence are as follows:

A marriage ceremony was performed between appellant and appellee in the city of Rochester and State of New York, on the 27th day of January, 1877, and the parties lived and cohabited as husband and wife in the said State for some years thereafter. At the time of said marriage appellant knew that appellee had been before married to a man named Allen, but was informed by appellee that her said husband, Allen, had been dead some eight years. In December, 1886, appellant ascertained that Allen was alive and a resident of Flint, Michigan. Appellee was married to Jerome Allen in Cayuga county, State of New York, in 1852, and lived with him as

his wife fourteen years.    In 1868, while living in the city of
Auburn, New York, she deserted her said husband, Jerome
Allen, and thereafter they never lived together.    Appellee
continued to reside in the State of New York, but said Jerome
Allen removed from said State in 1869 and located in the
State of Michigan, where he was living at the date of appel-
lant's marriage to appellee, and where he still resides.    In
1872 said Jerome Allen instituted, in the Superior Court
of the City of Detroit, a suit for divorce from appellee.
In said suit service was by publication only.    She was not
personally served with process or notice either in Michigan
or New York, and did not appear either in person or by attor-
ney.    At the time of said divorce proceeding she was a
resident of the State of New York, where she had continued to
live from the time she deserted said Allen, and she was not at
any time a resident of the State of Michigan.    Default was
entered against her in the proceeding in Detroit, and the
court, after hearing evidence in support of the bill, rendered
a decree of divorce.    As soon as appellant learned that Allen
was alive he ceased living with appellee, and shortly there-
after, on ascertaining the facts above set forth with reference
to the Detroit divorce, he instituted his suit for relief, pray-
ing to have the said marriage with appellee declared void
*ab initio.*

It has been maintained, as the law of the State of New York,
by a consistent line of decisions of the highest courts of said
State, running through a period of more than seventy years,
and commencing with the case of Borden v. Fitch, 15 Johns.
121, and finding the latest expression, so far as we are advised,
in Cross v. Cross, in 108 N. Y. 629, that a decree of divorce
obtained in another State against one who, at the time it was
rendered and during the pendency of the proceeding, was
domiciled in the State of New York, and who was not per-
sonally served with process, and did not appear in the action or
proceeding, is wholly inoperative and void, so far as relates to
the defendant in such divorce proceeding.    In The People v.
Baker, 76 N. Y. 78, the defendant, who was indicted for the
crime of bigamy, offered in evidence an exemplified copy of

the record of judgment in the Court of Common Pleas of the County of Seneca, State of Ohio, in a proceeding against him by his first wife for divorce, in which, before he married the second wife in New York, a decree was entered, purporting to dissolve the first marriage. The record shows proof of service on the defendant by publication, and no personal appearance by him. Prior to the commencement of said judicial proceedings in Ohio the defendant resided at Rochester, in the State of New York, and he continued to reside there until after the decree of divorce was rendered, and there was no pretense that defendant was domiciled in Ohio, or temporarily abiding there at any time during the pendency of the divorce proceedings. The record was excluded, so far as it was offered to prove the dissolution of the prior marriage, and the defendant was convicted, and the conviction sustained by the Court of Appeals, on the ground that the Ohio decree of divorce was without effect upon the status of the defendant in New York, and that notwithstanding said decree, his marriage to a second wife while his first wife was living, was a crime. O'Dea v. O'Dea, 101 N. Y. 23, was, as this case is, a suit by the husband to have the marriage declared void, upon the ground that at the time it took place a former husband of the defendant was living, and the marriage with him was in full force. The proof was that the defendant married her former husband in New York, and lived with him in that State till 1860, when she left him and returned to her former home in Canada, where she continued to reside until 1865; that said former husband left New York and became a resident of the State of Ohio where, in March, 1864, after a residence of more than one year, he commenced a proceeding for divorce from the defendant, on the ground of desertion; that copy of the petition for divorce and of the summons issued thereon were sent by mail to the defendant, at Toronto, Canada, in March, 1864, and were received by her; that in April, 1864, depositions in said divorce proceeding were taken in Toronto on notice to defendant, and she was present at the taking thereof, but took no part in person or by counsel. She never in any way appeared in the proceeding in Ohio.

A decree was granted by the Ohio court, dissolving the marriage, and after the entry of said decree the defendant married the plaintiff, who knew when the marriage occurred that defendant had been a wife, and was not a widow, and also knew of the Ohio divorce proceedings during its pendency, and of its result. The former husband was living in Ohio at the time of the marriage of plaintiff and defendant. It was held that the Ohio court had acquired no jurisdiction over the defendant; that the decree of divorce was as to her inoperative and void; that her former marriage was still in full force, and therefore her marriage with the plaintiff was illegal and void.

These cases serve to illustrate the strictness with which the rule is adhered to in New York, and the severity with which it is administered, and they make it clear that if appellant was seeking in that State the same relief against the marriage with appellee that he is seeking here, it would undoubtedly be afforded to him.

Having become a resident of this State, is he not entitled to the same relief here that he might obtain by application to the courts of the State in which the marriage contract, alleged to be void, was made?

It must be noted that the question is not, what force and effect might be given to the Michigan divorce, if the inquiry arose in relation to the status of one of the parties to that proceeding, who should afterward contract marriage in this State. We are not called upon to determine the validity of the Detroit divorce; our inquiry relates to the validity of the New York marriage.

The law regards marriage as creating a status. The status is based upon the contract of the parties, and the validity of the contract is determined by the law of the place where the contract is made. The *lex loci contractus* is the test of the validity of all contracts, unless it appears that the contract is to be performed in some other jurisdiction. The presumption is, the contract of marriage is to be performed in the place in which the parties to it are domiciled at the time the marriage is performed, and the capacity of each party to enter into a

valid contract must therefore be determined by the law of the place of the marriage.   Warrender v. Warrender, 2 Cl. & F. 536;  Schreck v. Schreck, 32 Tex. 587.

It is shown that the parties to the marriage in question were domiciled in New York, and that the marriage ceremony was performed there, and if, by the law of that State, it was unlawful for one of the parties to intermarry, the marriage was invalid, and if invalid, for such reason, at the place where the contract was made, it must be held invalid wherever the question of its validity is raised for determination.

Complainant on the hearing in the court below introduced the New York decisions in evidence.   The law of New York was thus proved to the court, and it was the duty of the court to determine the validity of the New York marriage by the New York law.

As we have seen, by that law appellee had another husband living at the time she contracted the marriage with appellant, and she was incapacitated to contract such marriage and in doing so committed an offense against the State.

Such marriage was in fact and effect nothing but a mere form ; as a contract or as creating the status of marriage between the parties, it was an absolute nullity.   We think it clearly within the power of the court to grant the relief prayed by the bill, and that it was error to dismiss the bill for want of equity.   The decree of the Superior Court will, therefore, be reversed and the case remanded to that court, with directions to enter a decree in conformity with the prayer of the bill.                *Reversed and remanded.*